# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# AT NASHVILLE

| | |
|---|---|
| OMNISOLVE, LLC and<br>SIRROM PARTNERS, L.P.<br><br>    Plaintiffs,<br><br>v.<br><br>JACK ROBERTS,<br><br>    Defendant. | Civil Action No. _____<br><br>JURY DEMANDED |

## COMPLAINT

OmniSolve, LLC ("OmniSolve") and Sirrom Partners, L.P. ("Sirrom") hereby file their Complaint against Defendant Jack Roberts ("Roberts"), and state as follows:

## PARTIES

1. OmniSolve is a Delaware limited liability company. OmniSolve does not currently have a principal place of business, although all of its board members, with the exception of Defendant, reside in Nashville, Tennessee and all board meetings take place in Tennessee.

2. Sirrom is a Tennessee limited partnership and is the majority owner of OmniSolve. Sirrom's principal place of business is located at 104 Woodmont Blvd., Suite 122, Nashville, Tennessee.

3. Upon information and belief, Defendant Jack Roberts currently resides in Dana Point, California.

## JURISDICTION AND VENUE

4. Subject matter jurisdiction is proper in this matter pursuant to 28 U.S.C. § 1332 as there is complete diversity between the parties and the amount in controversy exceeds $75,000.00.

1

5. This Court has personal jurisdiction over Roberts because Roberts was the CEO and President of OmniSolve (but has been terminated as a result of the conduct described herein). Roberts reports to the Board of Directors of OmniSolve, which is located in Nashville, Tennessee. Roberts himself was a board member of OmniSolve and had an obligation to attend its board meetings and has attended Sirrom board meetings in Nashville, Tennessee. Roberts has repeatedly and continuously done business on behalf of OmniSolve at the direction of Sirrom in Tennessee. He routinely has calls and texts with Sirrom, makes presentations to it, and reports to Sirrom as the majority shareholder of OmniSolve.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this judicial district and the damages that have resulted from Roberts' conduct will be felt in this district.

**FACTS**

**I.  The Parties**

7. OmniSolve is a global IP licensing and prototyping firm with over 100 patents in microfluidics and atomization technology. It partners with businesses and researchers to solve current issues such as infection control in the coatings space, chemical drift for the agriculture industry, inefficient manufacturing processes, and other key disruptors of progress. Its primary product, OmniSurface, is a disinfectant that kills germs on "high touch" surfaces for as long as six months. This patent to this product is owned by a Dr. Ducker of Virginia Tech University. OmniSolve markets the product and pays a royalty to Dr. Ducker based on sales.

8. Sirrom is a business development firm that is the majority owner of OmniSolve.

9. Roberts was hired as OmniSolve's CEO and began work on or about December 1, 2020. He was paid a salary of $250,000, with the possibility of a large bonus based on performance.

He was also awarded equity in OmniSolve. Roberts' overarching responsibility was to grow and operate the company in an ethical and responsible manner.

10. In early 2023, Roberts told Sirrom and the OmniSolve Board that he felt that OmniSolve's best opportunities were in Mexico. He represented that he had contacts in Mexico and experience with that market.

11. Based on his representations, Sirrom and the OmniSolve Board authorized him to investigate the market for OmniSolve's products in Mexico. He spent a great deal of time there and sent back positive reports touting the success of his efforts. He represented to Sirrom and the OmniSolve Board that he was steadily growing the business and its opportunities there.

12. On January 19, 2025, Roberts made a presentation to Sirrom that purported to outline the current state of OmniSolve's business and financial affairs.

13. Roberts reported that OmniSolve had offices in Mexico where it was successfully generating revenue based on sales of OmniSurface. According to Roberts, OmniSolve was successful and was turning a profit for the first time.

14. Roberts reported that he had managed to obtain contracts for OmniSolve with an entity called Molokai, the Mexican government, and Uber.

15. In the January 19, 2025 presentation, Roberts presented Sirrom with a financial statement outlining $293,627 of allocated expenses to Dr. Ducker of Virginia Tech University for royalties on sales of OmniSurface.

16. Based on Robert's representations on the work he was doing and the success he was having, OmniSolve and Sirrom continued to advance him money in the form of salary and operating expenses.

17. Tennessee board members, including John Morris, M.D., Vic Gatto, and Andy Smith, were scheduled to travel to Mexico on March 2, 2025, to see the Mexican operations and meet the team there.

18. At 5:30 am on March 2, 2025, the day they were to travel, Dr. Morris received an email from Roberts telling them not to travel to Mexico. He stated that he had not been transparent about operations there; there was no office to see and no team to meet. He told them not to come and that he was not even in Mexico.

19. Obviously, this text was alarming to the Board and to Sirrom. They immediately tried to contact Roberts but he has not responded to any of their numerous attempts to reach him.

20. Sirrom hired a law firm in Mexico that confirmed there was no operational office in Mexico.

21. OmniSolve and Sirrom have also been unable to access any bank accounts or funds that should rightfully belong to OmniSolve.

22. OnmiSolve's Board chair also reached out to Dr. Ducker and learned that Dr. Ducker had never received the $293,627 payment that Roberts' financial statements represented that OmniSolve had paid. Not only had Dr. Ducker not received payment, he had not been in communication with Roberts for over a year.

23. In order for Roberts and OmniSolve to have true and legitimate business operations, Roberts would have had to pay royalties to use Ducker's proprietary disinfectant. If Roberts had not obtained the product from Dr. Ducker and paid royalties on it, he has either perpetuated fraud on his alleged customers by selling something other than legitimate product, or he had falsified the existence of the sales and customers, or both.

## COUNT ONE:
## BREACH OF FIDUCIARY DUTY

24. OmniSolve and Sirrom incorporate by reference all allegations above as if fully restated herein.

25. As an officer and director of OmniSolve, Roberts owed the fiduciary duties of care and loyalty to it.

26. Upon information and belief, Roberts has misappropriated funds belonging to OmniSolve of unknown amounts, but of at least the amount of $293,627 that he falsely represented was paid to Dr. Ducker.

27. Upon information and belief, he has lied to OmniSolve and Sirrom regarding his activities on behalf of OmniSolve and its customers and sales.

28. Upon information and belief, he provided false financial information to the Board and to Sirrom that mispresented the company's financial health.

29. Roberts' breach of his fiduciary duty as described herein has damaged OmniSolve and Sirrom.

30. Roberts is liable to OmniSolve and Sirrom in an amount in excess of $75,000, to be determined at trial.

## COUNT TWO
## CONVERSION

31. OmniSolve and Sirrom incorporate by reference all allegations above as if fully restated herein.

32. Upon information and belief, Roberts intentionally appropriated and exercised dominion over OmniSolve's corporate funds and Sirrom's investment funds for his own use and

benefit in defiance of OmniSolve and Sirrom's rights when Roberts misappropriated the nearly $300,000 that was never paid to Dr. Ducker.

33. OmniSolve and Sirrom were damaged by Roberts' wrongful conversion of its corporate funds.

34. OmniSolve and Sirrom are entitled to all damages arising from this conduct that they are able to establish at trial.

## COUNT THREE
## FRAUD

35. OmniSolve and Sirrom incorporate by reference all allegations above as if fully restated herein.

36. Roberts has mispresented existing material or past facts to Plaintiffs. He stated that he had obtained customers that either did not exist or were not sold legitimate product. He represented that substantial funds had been paid to Dr. Ducker, which was false. He represented that he had opened an office in Mexico and had a team there successfully marketing OmniSolve's products. He represented he was growing the business in a responsible and ethical manner. He provided fabricated financial information to Plaintiffs. All of these representations were false.

37. Upon information and belief, Roberts knew these representations were not true when they were made because he had to purposely falsify the business records to allow him to continue this charade.

38. Plaintiffs reasonably relied on these statements and continued to entrust him with their business and continued to pay him a large salary.

39. The Plaintiffs have been damaged as a result of Roberts' fraud in an amount to be determined at trial.

6

## COUNT FOUR
## PROMISSORY FRAUD

40. OmniSolve and Sirrom incorporate by reference all allegations above as if fully restated herein.

41. Roberts has mispresented material facts to Plaintiffs. He stated that he had obtained customers that either did not exist or were not sold legitimate product. He represented that substantial funds had been paid to Dr. Ducker, which was false. He represented that he had opened an office in Mexico and had a team there successfully marketing OmniSolve's products. All of these representations were false. He further promised to continually develop and grow OmniSolve's business in Mexico. These promises that he was performing and would continue to perform in the future were not true.

42. Upon information and belief, Roberts knew these representations were not true when they were made because he had to falsify the business records to allow him to continue this charade.

43. Upon information and belief, Roberts had no intention of performing and operating the business in a responsible and ethical manner at the time he made these statements.

44. Plaintiffs reasonably relied on these statements and continued to entrust him with their business and continued to pay him a large salary.

45. The Plaintiffs have been damaged as a result of Roberts' promissory fraud in an amount to be determined at trial.

**PRAYER FOR RELIEF**

Wherefore, OmniSolve and Sirrom respectfully prays for the following relief:

1. That the Court empanel a jury;

2. That the Court find that Roberts has violated his fiduciary duty to OmniSolve and Sirrom and award it all allowable damages that have resulted from this conduct;

3. That the Court find that Roberts has committed conversion;

4. That the Court find that Roberts has committed fraud and promissory fraud;

5. That the Court award OmniSolve and Sirrom exemplary damages to the extent permitted by law;

6. That the Court award OmniSolve and Sirrom punitive damages in an amount sufficient to punish Roberts for his intentional, malicious, and reckless misconduct, and to deter others from similar misconduct;

7. That the Court award OmniSolve and Sirrom pre- and post-judgment interest; and

8. That the Court grant all further relief to OmniSolve and Sirrom as it deems equitable and justified.


DATED: March 7, 2025

Respectfully submitted,

*/s/ Paige Waldrop Mills*
Paige Waldrop Mills (BPR No. 16218)
BASS, BERRY & SIMS, PLC
150 Third Avenue, Suite 2800
Nashville, Tennessee 37201
Tel: (615) 742-7770
pmills@bassberry.com

*Counsel for OmniSolve and Sirrom*

46835399.1